## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON TIMMONS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-2157** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **H. KERTES, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Presently before the Court is a motion to dismiss the second amended complaint filed by Defendants Wetzel, Barnacle, Kertes, Ransom, Martin, Cronauer, Yancheck, Goyne, Pyzia, Rushton, Miller, Mattern, Timms, Harrison, Blazick, Kehl, Raitter, Moss, Conrad, Lux, Bohinski, Wilson, and State Correctional Institution-Dallas ("SCI-Dallas") (collectively, "Moving Defendants").  (Doc. No. 20.)  For the following reasons, the Court finds that the claims raised in the second amended complaint filed by Plaintiff Brandon Timmons ("Timmons") are misjoined in violation of Federal Rule of Civil Procedure 20.  To remedy the misjoinder in accordance with Federal Rule of Civil Procedure 21, Timmons's claims against all Defendants other than Defendants Bohinski and John Doe will be dismissed without prejudice and dropped from this case.  Timmons's claims against Bohinski and John Doe will be allowed to proceed under the current docket, but will be dismissed without prejudice for failure to state a claim upon which relief may be granted.  Timmons will be granted leave to file an amended complaint with respect to his claims against Bohinski and John Doe only.

## I.    BACKGROUND

Timmons initiated this case through the filing of a complaint pursuant to 42 U.S.C. § 1983.  (Doc. No. 1.)  As noted, the case is proceeding on Timmons's second amended complaint, filed on April 20, 2022.  (Doc. No. 14.)  According to the allegations in the second amended

complaint, employees at SCI-Dallas follow a "routine practice" of retaliating against inmates for the filing of grievances and legal complaints.  (Doc. No. 14 at 3.)  Staff in the prison allegedly subjected Timmons to a "campaign of harassment" as part of this pattern.  (Id.)  Timmons allegedly informed Defendant Bohinski ("Bohinski") when he was first placed in SCI-Dallas on June 16, 2021 that he was going to have a "major problem" with staff retaliating against him because staff were taunting him when he arrived.  (Id.)  Timmons told Bohinski that he had several lawsuits pending, and Bohinski stated he was aware of Timmons's lawsuits.  (Id.) Bohinski allegedly told Timmons that he would "make sure" that Timmons experienced retaliation while in SCI-Dallas if he continued to file lawsuits.  (Id.)  Bohinski then called Timmons a rat as Timmons was leaving the area.  (Id.)

Timmons allegedly attempted to file a grievance against Bohinski for this interaction, but a John Doe correctional officer refused to send the grievance on Timmons's behalf.  (Id. at 3-4.) The officer purportedly told Timmons that he would not send mail from Timmons because he liked to file lawsuits.  (Id. at 4.)  He also purportedly told Timmons that inmates who filed grievances against Bohinski got "the shit beat out of them."  (Id.)  Timmons alleges that this was retaliation for attempting to file a grievance against Bohinski.  (Id.)

The second amended complaint alleges a series of events that occurred in approximately the next nine months after this interaction that Timmons alleges constitute retaliation for his filing of grievances and complaints.  Defendants Rushton ("Rushton") and Harrison ("Harrison") allegedly verbally harassed Timmons from June 27, 2021 to November 13, 2021, repeatedly calling him a rat and making comments about his pending lawsuits.  (Id.)  They also repeatedly denied him soap and toilet paper from July 2021 to August 2021, and Rushton denied him a hair cut in September 2021.  (Id. at 4-5.)  Defendant Pyzia ("Pyzia") allegedly placed him on "90 Day

2

Cell Move List" and stated this was done because Timmons liked to file lawsuits and grievances. (Id. at 4.)  A Jane Doe correctional officer allegedly contaminated three commissary bags containing food items meant for Timmons with a foreign substance in October 2021.  (Id. at 5.)

Defendants Kehl ("Kehl") and Moss ("Moss") allegedly assaulted Timmons on November 13, 2021, repeatedly punching and kicking Timmons while he was handcuffed to a "shower stairwell," hitting him on the head with a "metallic object," and punching him and kicking him after he fell to the ground.  (Id. at 6.)  Defendant Fye allegedly failed to intervene to stop the assault.  (Id.)  Kehl allegedly made statements during the assault indicating that the assault was done because Timmons liked to sue and file grievances.  (Id.)  Timmons was taken to the medical department, but defendants Lux ("Lux"), Prince ("Prince"), and John Doe allegedly refused to provide him care when he arrived at the medical department.  (Id. at 6-7.)

Two John Doe Defendants allegedly denied Timmons food for a three-day period from November 13, 2021 to November 15, 2021.  (Id. at 7.)  On November 16, 2021, Defendant O'Boyle ("O'Boyle") allegedly denied Timmons a misconduct hearing in connection with a disciplinary charge against him.  (Id. at 8.)  On the same day, Defendant Wilson ("Wilson") allegedly gave Timmons linens that were contaminated with pepper spray.  (Id.)  Timmons repeatedly attempted to return the contaminated linens to prison staff over the next five days, but the staff purportedly refused his requests.  (Id.)  Defendant Yancheck ("Yancheck") allegedly issued a false misconduct charge against Timmons on November 17, 2021.  (Id. at 9.)  Defendant Conrad ("Conrad") and two John Doe Defendants allegedly destroyed $800 worth of books from Timmons's cell on November 21, 2021.  (Id.)

Defendants Mattern ("Mattern"), Blazick ("Blazick"), Miller ("Miller") and several other correctional officers allegedly denied Timmons showers from November 16, 2021 to December

3, 2021.  (Id. at 10.)  The officers allegedly stated on one occasion that the denial of showers was

motivated by Timmons's actions in filing grievances and lawsuits.  (Id.)  Several books that were

sent to Timmons by family members allegedly went missing without explanation on November

22, 2021.  (Id.)  Defendants Blazick, Mattern, and O'Boyle repeatedly denied Timmons salt and

pepper with his meals during this period.  (Id.)  Timmons was allegedly denied salt and pepper

repeatedly from November 29, 2021 to March 19, 2022.  (Id.)  A Jane Doe correctional officer

also discarded eight books that had been mailed to Timmons on December 24, 2021.  (Id. at 11.)

On January 2, 2022, a John Doe correctional officer allegedly tossed a mouse into

Timmons's cell.  (Id. at 12.)  The mouse ran up Timmons's leg and into his jumpsuit.  (Id.)

Unnamed prison officials also allegedly interfered with a virtual video visit Timmons was

scheduled to have on January 2, 2022.  (Id.)  Timmons asked Defendant Goyne ("Goyne") to

stop other staff members from retaliating against him shortly after this incident, but Goyne

allegedly failed to take any action.  (Id.)  A different John Doe Defendant then allegedly threw

another mouse on Timmons on January 6, 2022.  (Id. at 13.)  The Defendant allegedly made a

statement indicating that he threw the mouse on Timmons because Timmons was a rat for filing

grievances and lawsuits.  (Id.)

Defendant Timms allegedly repeatedly removed cereal and cake from Timmons's meals

from January 2022 to March 2022.  (Id.)  Defendant Raitter ("Raitter") allegedly gave Timmons

dirty linens on January 2, 2022.  (Id. at 14.)  Timmons requested new linens, but Raitter denied

his requests.  (Id.)  Raitter also allegedly confiscated twelve magazines from Timmons on

January 18, 2022.  (Id.)  Raitter allegedly told Timmons that he had done so because Timmons

had filed grievances and lawsuits.  (Id.)  Raitter also allegedly told Timmons that he would have

Timmons stabbed if Timmons filed any grievances against him.  (Id.)  On February 19, 2022,

Mattern and Blazick allegedly put mouse feces on Timmons's food and stated "we put mouse shit in your tray for those grievances and lawsuits." (Id. at 15.)

On March 2, 2022, unnamed prison officials cut short a virtual video visit that Timmons was participating in. (Id. at 16.) On March 4, 2022, O'Boyle allegedly gave Timmons a food bag that had been opened with liquid poured inside. (Id. at 15.) On March 18, 2022, a John Doe correctional officer allegedly turned off the water in Timmons's cell for approximately twenty-four hours and made a comment indicating that the action was done because of Timmons filing grievances and lawsuits. (Id. at 16.)

Timmons informed Defendants Ransom ("Ransom"), Cronauer ("Cronauer"), Martin ("Martin"), Barnacle ("Barnacle"), Kertes ("Kertes"), Wetzel ("Wetzel"), Bohinski, and Goyne of the purported retaliation against him on several occasions, but they allegedly did nothing to stop the retaliation. (Id. at 4, 9, 12, 16-19.) Timmons asserts claims for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 for retaliation, deliberate indifference, supervisory liability, denial of medical care, denial of free speech, cruel and unusual punishment, medical malpractice, denial of due process, and denial of access to courts. (Id. at 20-26.) He seeks damages, declaratory relief, and injunctive relief. (Id. at 27.)

Moving Defendants filed the instant motion to dismiss on June 21, 2022. (Doc. No. 20.) Defendants assert three arguments for dismissal: (1) that the second amended complaint should be dismissed as a shotgun pleading; (2) that the second amended complaint should be dismissed because it contains misjoined claims in violation of Federal Rule of Civil Procedure 20; and (3) that Timmons's claims against SCI-Dallas should be dismissed because SCI-Dallas is entitled to sovereign immunity. (Doc. No. 24 at 3.) Briefing on the motion to dismiss is complete and it is ripe for review. (Doc. Nos. 24, 27.)

II.     **LEGAL STANDARDS**

A.     **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must

take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

**B.    Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.    Misjoinder

The Court will first consider Defendants' argument that Timmons's claims are misjoined in violation of Federal Rule of Civil Procedure 20.  Under Rule 20, claims against multiple defendants may be joined in the same action only if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> **(B)** any question of law or fact common to all defendants will arise in the action.

See Fed. R. Civ. P. 20(a)(2).

Upon review of Timmons's second amended complaint, the Court agrees with Defendants that the complaint contains misjoined claims in violation of Rule 20.  The complaint alleges a series of disparate events over a nine-month period connected by nothing other than Timmons's assertion that all of the events were retaliatory in nature.  There is no allegation of any individual or group of individuals directing the retaliatory actions of the other Defendants, nor is there any allegation that the Defendants' allegedly retaliatory actions were motivated by

the same protected conduct by Timmons.  Thus, it appears that the only thing connecting the

events at issue in this case is Timmons's speculation that seemingly every adverse action taken

against him by prison officials over a nine-month period of time was done in retaliation.  Even

assuming the truth of Timmons's assertions that all of the actions by Defendants were retaliatory

in nature, this would not be a sufficient basis for the claims to be joined, as there is nothing in the

complaint to indicate that the retaliatory actions were factually connected to one another as

opposed to a series of discrete acts of retaliation by individuals acting with their own motives

independently from one another.  Accordingly, the Court finds that the second amended

complaint violates Rule 20 by joining unrelated claims in a single action.

Misjoinder of claims, however, is not grounds for dismissal of the entire action.  See Fed.

R. Civ. 21; Sabolsky v. Budzanoski, 457 F.2d 1245, 1249 (3d Cir. 1972).  Rather, a district court

has two options when a plaintiff has misjoined claims: (1) "drop" the misjoined parties from the

case on "just terms" or (2) sever the claims into separate lawsuits.  See Fed. R. Civ. P. 21;

DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006).  When a party is dropped under Rule

21, he is dismissed from the case without prejudice.  See DirecTV, Inc., 467 F.3d at 845 (citing

Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1068 (3d Cir. 1979)).  The

statute of limitations for claims against that defendant is not tolled because the initial complaint

is treated "as if it never existed."  See id. (quoting Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir.

2005)).  When, on the other hand, the claims are severed, "the suit simply continues against the

severed defendant in another guise."  See id. (citing White v. ABCO Eng'g Corp., 199 F.3d 140,

145 n.6 (3d Cir. 1999)).

District courts have discretion to choose whether misjoined claims should be dismissed or

severed.  See id.  Courts may only dismiss misjoined claims, however, if doing so would be just,

"that is, if doing so 'will not prejudice any substantial right'" of the plaintiff.  See id. (internal emphasis omitted) (quoting Sabolsky, 457 F.2d at 1249).  "Hence, a court must analyze the consequences of a dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance."  Id.

In this case, Timmons's claims are brought under 42 U.S.C. § 1983, which is subject to a two-year statute of limitations in Pennsylvania federal courts.  See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).  His claims arise from events that began in June 2021. Accordingly, dismissal of the misjoined claims will not impact Timmons's ability to refile the claims in a separate lawsuit, as the limitations period for the claims will not expire until June 2023 at the earliest.

In light of the above conclusions that the second amended complaint contains misjoined claims and that dismissal of the misjoined claims would not impact Timmons's ability to refile the misjoined claims in new lawsuits prior to expiration of the limitations period, the Court will exercise its discretion under Rule 21 and dismiss without prejudice all claims other than the earliest claim of alleged retaliation: Bohinski's June 16, 2021 statement that he would "make sure" that staff retaliated against Timmons and that Timmons was a rat, and John Doe's subsequent refusal to file a grievance for Timmons and statement that inmates who filed grievances against Bohinski got "the shit beat out of them."

**B.      Timmons's Remaining Claim**

Having resolved the joinder issue, the Court turns to the sole remaining retaliation claim against Bohinski and John Doe.  To state a retaliation claim upon which relief may be granted, a plaintiff must allege that (1) the plaintiff engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against the plaintiff that was sufficient to deter a person of

ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the plaintiff's protected conduct and the defendant's retaliatory action.  See Javitz v. Cty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019).  The Court finds that Timmons fails to state a retaliation claim upon which relief may be granted, as the actions allegedly committed by Bohinski and John Doe are not sufficiently adverse to support a retaliation claim upon which relief may be granted.  See, e.g., Naranjo v. Walter, No. 1:20-cv-00918, 2022 WL 17627762, at *5 (M.D. Pa. Dec. 13, 2022) (collecting cases for the proposition that isolated incidents of verbal harassment are not sufficiently adverse actions to support a retaliation claim upon which relief may be granted); Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015) (unpublished) (noting that "denial of grievances is not an 'adverse action' for retaliation purposes").

C.      Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.

Based on the foregoing, the Court cannot conclude that further amendment would be futile with respect to Timmons's retaliation claim against Defendants Bohinski and John Doe.  Accordingly, Timmons will be granted leave to file a third amended complaint with respect to

11

his claims against Bohinski and John Doe only.  Timmons is advised that the third amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the first three complaints or any other document already filed.  The third amended complaint should set forth Timmons's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions are alleged as to the defendant and sufficiently allege personal involvement of the defendant in the acts that Timmons claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.  If Timmons fails to file a third amended complaint, this case will be dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.  The claims against all Defendants other than Bohinski and John Doe will be dismissed without prejudice and dropped from this lawsuit.  The claims against Bohinski and John Doe will be dismissed without prejudice. Timmons will be granted leave to file a third amended complaint with respect to his claims against Bohinski and John Doe only.  An appropriate Order follows.